**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BAKER HUGHES INCORPORATED AND BAKER HUGHES OILFIELD OPERATIONS, INC., | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:11-CV-03757 |
| v. | § | |
| | § | JUDGE LEE H. ROSENTHAL |
| DANIEL S. HOMA, ROBERT M. HARMAN, FCTECH, INC., FCT FIBER CABLE TECHNOLOGY GMBH, AND NBG SYSTEMS GMBH, | § | |
| Defendants. | § | |

**DEFENDANTS HOMA, HARMAN, AND FCTECH'S**
**RULE 12(B)(6) MOTION TO DISMISS**
**FOR FAILURE TO STATE A CLAIM**

Defendants Daniel S. Homa ("Homa"), Robert M. Harman ("Harman"), and FCTech, Inc. ("FCTech"), (collectively "Movants" or "Homa/Harman/FCTech"), file this Motion to Dismiss pursuant to Rule 12(b)(6), to request that this Court dismiss a number of claims in Plaintiffs' Complaint, for failure to state a claim upon which relief can be granted.

Movants Homa/Harman/FCTech submit this motion to address a finite set of issues, with the hope that an early resolution of these threshold matters can result in an agreed resolution of this case. Movants request that this Court conduct a conflict of laws analysis to determine that Virginia is the appropriate state law to apply for Plaintiffs' claims, and then apply Virginia law to:

1) Dismiss Plaintiffs' request for injunctive relief to the extent that it is based on the inevitable disclosure doctrine, which has been rejected under Virginia law;
2) Dismiss Plaintiffs' Texas Theft Liability Act claim as inapplicable under Virginia law;
3) Dismiss Plaintiffs' claims based on the non-solicitation provision in Homa and Harman's employment agreements, which is void as an unenforceable restrictive covenant under Virginia law; and
4) Dismiss Plaintiffs' claims for attorneys' fees, which are not recoverable under Virginia law.

## TABLE OF CONTENTS


I. Conflict of Laws Analysis – Virginia Law Should Apply for Plaintiffs' Claims ................1

A. Under Texas Choice of Law Rules, Virginia Law Applies to the Contract Claims, Despite the Parties' Choice of Texas Law in the Employment Agreements ........................................................................................................1

B. Under Texas Choice of Law Rules, Virginia Law Applies to The Tort Claims under The "Most Significant Relationship" Test .......................................4

II. Virginia Law Has Rejected the Inevitable Disclosure Doctrine .........................................5

III. Plaintiffs' Texas Theft Liability Act Claim is Inapplicable under Virginia Law ................8

IV. The Non-Solicitation Provision in Homa and Harman's Employment Agreements is Void as an Unenforceable Restrictive Covenant under Virginia Law ...........................11

V. Plaintiffs' Claims for Attorneys' Fees Are Not Recoverable under Virginia Law............15

VI. Alternative Rule 12(b)(3) Motion to Dismiss for Improper Venue..................................15

VII. Conclusion ........................................................................................................19

## TABLE OF AUTHORITIES

### U.S. COURT OF APPEALS CASES

Caton v. Leach Corp.,
896 F.2d 939 (5th Cir.1990) .......... 4

PepsiCo, Inc. v. Redmond,
54 F.3d 1262 (7th Cir. 1995) .......... 6, 7

### U.S. DISTRICT COURT AND ADMINISTRATIVE CASES

Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC,
No. 3:08-CV-1782-M, 2009 WL 1469808 (N.D. Tex. May 27, 2009) .......... 9

Harry Miller Co. v. Carr Chem,
5 F.Supp.2d 295 (E.D. Pa. 1998) .......... 19

Interbake Foods, L.L.C. v. Tomasiello,
461 F.Supp.2d 943 (N.D. Iowa 2006) .......... 7

Japan Gas Lighter Ass'n v. Ronson Corp.,
257 F. Supp. 219 (D. N.J. 1966) .......... 16

Lanmark Tech, Inc. v. Canales,
454 F.Supp.2d 524 (E.D.Va.2006) .......... 14

Maxxim Medical, Inc. v. Michelson,
51 F.Supp.2d 773 (S.D. Tex. 1999) .......... 1, 2, 4

Paul Green School of Rock Music Franchising, LLC v. Rock Nation, LLC,
2009 WL 129740 (E.D. Pa. Jan. 13, 2009) .......... 18

Roto–Die, Inc. v. Lesser,
899 F.Supp. 1515 (W.D.Va.19995) .......... 14

Settlement Capital Corp. v. Pagan,
649 F. Supp. 2d 545 (N.D. Tex. 2009) .......... 9

### STATE COURT CASES

Blue Ridge Anesthesia v. Gidick,
389 S.E.2d 467 (Va. 1990) .......... 12

Coca-Cola Co. v. Harmar Bottling Co.,
218 S.W.3d 671 (Tex. 2007) .......... 10

DeSantis v. Wackenhut Corp.,
793 S.W.2d 670 (Tex. 1990) .......... 1, 2, 3

Duncan v. Cessna Aircraft Co.,
665 S.W.2d 414 (Tex. 1984)........................................................................................ 4

Gilmore v. Basic Industries,
357 S.E.2d 514 (Va. 1987) ........................................................................................ 15

Government Technology Services, Inc. v. IntelliSys Tech. Corp.,
1999 WL 1499548 (Va. Cir. Ct. Oct. 20, 1999) .......................................................... 7

Gutierrez v. Collins,
583 S.W.2d 312 (Tex. 1979)........................................................................................ 4

Home Paramount Pest Control Companies, Inc. v. Shaffer,
--- S.E.2d ----, 2011 WL 5248212 (Va. Nov. 5, 2011) ............................................ 12, 13

Lannon v. Lee Conner Realty Corp.,
385 S.E.2d 380 (Va. 1989) ........................................................................................ 15

Lasership Inc. v. Watson,
79 Va. Cir. 205 (Va.Cir.Ct. 2009). ........................................................................ 12, 14

Marmon v. Mustang Aviation, Inc.,
430 S.W.2d 182 (Tex. 1968)...................................................................................... 10

Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759 (Tex. App.—Corpus Christi 1999,
pet. denied)................................................................................................................ 10

Simmons v. Miller,
544 S.E.2d 666 (Va. 2002) ........................................................................................ 12

Whyte v. Schlage Lock Co.,
101 Cal.App.4th 1443 (2002) ...................................................................................... 6

**STATUTES AND RULES**

28 U.S.C. § 1391(a) ...................................................................................................... 16

28 U.S.C. § 1391(d) ...................................................................................................... 16

Fed. R. Civ. P. 12(b)(3).................................................................................................. 16

TEX. CIVIL PRAC. & REM. CODE § 134.002 .................................................................... 8

TEX. PENAL CODE § 1.04 ........................................................................................ 8, 9, 10

TEX. PENAL CODE § 31.03 .............................................................................................. 8

**TREATISES AND SECONDARY AUTHORITIES**

Applicability of Inevitable Disclosure Doctrine Barring Employment of Competitor's
Former Employee, 36 A.L.R.6th 537 (2008)................................................................ 7

House Research Organization Daily Floor Report, S.B. 269 (May 27, 1987) ............................ 11
O'CONNOR'S TEXAS CAUSES OF ACTION (2011) ........................................................................ 11
RESTATEMENT (SECOND) OF CONFLICTS OF LAWS ......................................................................... 4

I. Conflict of Laws Analysis – Virginia Law Should Apply for Plaintiffs' Claims

Movants request that this Court conduct a conflict of laws analysis to determine that Virginia is the appropriate state law to apply for Plaintiffs' claims. Plaintiffs have asserted tort and contract claims, the Court should conduct a conflict of laws analysis for both. In its 1990 decision in ***DeSantis v. Wackenhut Corp.***, 793 S.W.2d 670 (Tex. 1990), the Texas Supreme Court provided a detailed road map for the conflicts of law analysis for the contract claims in this case. For the tort claims, Judge Harmon's 1999 decision in ***Maxxim Medical, Inc. v. Michelson***, 51 F.Supp.2d 773 (S.D. Tex. 1999), provides a similar roadmap for the conflicts of law analysis for the tort claims in this case.

A. Under Texas Choice of Law Rules, Virginia Law Applies to the Contract Claims, Despite the Parties' Choice of Texas Law in the Employment Agreements

In the ***DeSantis*** case, the Texas Supreme Court addressed a contractual choice of law situation that is strikingly similar to the present case. In the ***DeSantis*** case, the employment agreement at issue was between an employee residing and working in Texas, and an employer chartered and headquartered in Florida. Although the employment agreement included a choice of law provision stating that "any question concerning interpretation or enforcement of this contract shall be governed by Florida law," 793 S.W.2d at 675, the ***DeSantis*** Court applied Texas choice of law rules to hold that the enforceability of the agreement must be judged by Texas law, not Florida law. ***Id.*** at 681.

For the same reason that the ***DeSantis*** Court held that Texas law must apply in that case, this Court should hold that Virginia law must apply in the present case, in which the employment agreement was between employees residing and working in Virginia, and an employer chartered

in California and headquartered in Texas,[1] despite the fact that employment agreement included a choice of law provision stating that "the laws of the State of Texas . . . shall govern this Agreement."[2] The bottom line is the employment agreements at issue were for the performance of personal services in Virginia, where both Homa and Harman were working in Baker Hughes' Blacksburg, Virginia facility. "As a rule, that factor alone is conclusive in determining what state's law is to apply." ***DeSantis***, 793 S.W.2d at 679.[3]

After resolving that first step in the analysis, to determine that Virginia law would apply under the "most significant relationship" test, but for the parties' choice of Texas law, the next two steps in the analysis, according to the ***DeSantis*** decision, are to determine whether: 2) Virginia has a materially greater interest than Texas in deciding whether the contractual provisions at issue should be enforced; and 3) Virginia's public policy would be contravened by applying Texas law. ***See id.***; ***see also Maxxim***, 51 F.Supp.2d at 779-80.

Because we are dealing with contractual issues including the non-solicitation provision in the employment agreements, which Virginia law treats as a restrictive covenant that is a disfavored restraint of trade, subject to the same strict reasonableness analysis applied to non-

---

[1] The employer for the Homa and Harman Employee Agreements is Plaintiff Baker Hughes Oilfield Operations, Inc., which asserts in the Complaint that it "is a California corporation with a principal place of business in Houston, Texas." (Complaint (Docket No. 1) at 4, ¶ 2.)

[2] (***See*** Homa/Harman Employee Agreements, ¶ 13 Choice of Law (attached as Exhibits A & B to the Willauer Affidavit (Docket No. 1-1 at pages 27-28 and 30-31) ("This Agreement is deemed to have been made in Houston, Texas, and the laws of the State of Texas, exclusive of the choice of law provisions, shall govern this Agreement without regard to the place of execution or the place of performance of this Agreement.").)

[3] ***See also Maxxim***, 51 F.Supp.2d at 780 ("The factor that tips the balance to California is that the gist of the agreement was the performance of personal services, for the most part, in California. This factor alone is generally conclusive in determining what state's law will apply.").

competition agreements[4] (see Section IV below), the ***DeSantis*** and ***Maxxim*** case analysis of noncompetition agreements applies across the board.

At stake here is whether Virginia residents Homa and Harman will be subjected to the restrictions set forth in the non-solicitation provision of the employment agreement. Thus, Virginia is directly interested in Homa and Harman as employees in the state, in Baker Hughes as a national employer doing business the state, in FCTech as a new business being formed in the state, and in consumers of the products to be furnished in Virginia by FCTech and developed by Homa and Harman. Texas' interest in the enforcement of the non-solicitation provision in this case is limited to protecting a national business headquartered in the state. Although it is always problematic for one state to balance its own interests fairly against those of another state, the circumstances of this case have little doubt, if any, that Virginia has a materially greater interest than Texas in deciding whether the non-solicitation provision in the employment agreements should be enforced.

The final step in the analysis, is determining whether Virginia's public policy would be contravened by applying Texas law. Once again, the ***DeSantis*** and ***Maxxim*** case analysis is instructive. Because Virginia law treats non-solicitation agreements as restrictive covenants that are disfavored restraints of trade, subject to the same strict reasonableness analysis applied to non-competition agreements (see Section IV below), the law governing enforcement of non-solicitation agreements is fundamental policy in Virginia, and to apply the law of another state such as Texas to determine the enforceability of such an agreement in the circumstances of a case like this would be contrary to that policy. ***See DeSantis***, 793 S.W.2d at 681.

---

[4] ***Home Paramount Pest Control Companies, Inc. v. Shaffer***, --- S.E.2d ----, 2011 WL 5248212, at *1 (Va. Nov. 5, 2011).

Applying the ***DeSantis*** and ***Maxxim*** case analysis across the board to the contractual choice of law issues in this case, including the non-solicitation provision in the employment agreements, compels the conclusion that under Texas choice of law rules, Virginia law applies to the contract claims in this case, despite the parties' choice of Texas law in the employment agreements.

B. Under Texas Choice of Law Rules, Virginia Law Applies to The Tort Claims under The "Most Significant Relationship" Texas

For the tort claims, Judge Harmon's 1999 decision in the ***Maxxim*** case provides a similar roadmap for the conflicts of law analysis. ***See id.***, 51 F.Supp.2d at 783-84. As in the breach of contract claims, this Court must determine which state's substantive law should apply. Texas has adopted the "most significant relationship" test, as enunciated in Section 6 and 145 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS, to resolve all conflicts of law cases sounding in tort. ***See Maxxim***, 51 F.Supp.2d at 783-84 (citing ***Gutierrez v. Collins***, 583 S.W.2d 312, 318 (Tex. 1979)). The test provides that the "law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." ***Caton v. Leach Corp.***, 896 F.2d 939, 943 (5th Cir.1990) (quoting ***Duncan v. Cessna Aircraft Co.***, 665 S.W.2d 414, 421 (Tex. 1984)).

The tort claims asserted by Plaintiffs in their Complaint include claims for alleged misappropriation of trade secrets, conversion, breach of fiduciary duties, unjust enrichment, and conspiracy, each of which arise from the individual Defendants Homa and Harman departing their employment at Baker Hughes' Blacksburg, Virginia facility, and starting Defendant FCTech in Roanoke, Virginia. Virtually all of the acts of which Plaintiffs complain were done by these Virginia residents while working and living in Virginia. The only relationship with

Texas is the relatively insignificant facts that the Plaintiffs' corporate headquarters and their attorneys are located in Texas.

There are two other factors that warrant mention. First is the fact that the choice of law provision in the employment agreements is limited to the agreement (***see supra***, note 2 ("the laws of the State of Texas . . . shall govern this Agreement"), and does not purport to apply beyond the agreement to govern tort claims. Second is the importance of the choice of law in this case in light of the critical distinctions between the laws of the states of Virginia and Texas for the asserted torts in the Complaint. For example, as set forth in Section II below, there are significant differences between Virginia and Texas law for enforcement of misappropriation of trade secrets claims, including Virginia's rejection of the inevitable disclosure doctrine. Another critical distinction is the inapplicability of the Texas Theft Liability Act under Virginia law, and the Plaintiffs' attempts to use this Texas law as an avenue to seek recovery of attorneys' fees, which, as set forth in Section V below, is not available under Virginia law.

In summary, since the "locus of the conduct" on which Plaintiffs' tort claims are based is in Virginia, there should be no doubt that this Court must apply Virginia law to Plaintiffs' tort claims.

## II. Virginia Law Has Rejected the Inevitable Disclosure Doctrine

Movants Homa/Harman/FCTech request that this Court apply Virginia law and dismiss Plaintiffs' request for injunctive relief to the extent that it is based on the inevitable disclosure doctrine, which has been rejected under Virginia law. Plaintiffs allege in their Complaint that Homa and Harman will "inevitably disclose" and use Plaintiffs' trade secrets. (Complaint (Docket No. 1) at 15-16, ¶ 48.) Plaintiffs assert the "inevitable disclosure" doctrine as a basis for their request for injunctive relief. (***See*** Plaintiffs' Application for Preliminary Injunction (Docket

No. 27) at 18 ("[I]mmediate and irreparable harm to BHI is inevitable if Defendants are allowed to continue to compete with BHI . . ..") (emphasis added).)

The doctrine of inevitable disclosure holds that in rare circumstances an individual possesses such critical knowledge of a company's trade secrets that he can be temporarily or even permanently banned from working in a specific job, because doing so would inevitably lead to disclosure of his former employer's trade secrets. The doctrine has been a source of controversy among courts and legal commentators, in part because of strong policy considerations on both sides of the debate, and in part because of inconsistent treatment by federal and state courts.

The inevitable disclosure doctrine proposes, in the words of one appellate court, that an employee may be prevented from working for another company if "the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets." ***Whyte v. Schlage Lock Co.***, 101 Cal.App.4th 1443, 1446 (2002). Originally, courts applied the doctrine only to technical fields, but it has been expanded to include a variety of trade secrets, including financial, manufacturing, production, and marketing information.

Although the doctrine can be traced to the early 1900's, the seminal inevitable disclosure case is ***PepsiCo, Inc. v. Redmond***, 54 F.3d 1262 (7th Cir. 1995). In the ***PepsiCo*** case, the U.S. Court of Appeals for the Seventh Circuit affirmed a preliminary injunction temporarily enjoining a former PepsiCo employee from working at a competing company, Quaker. The defendant Redmond had been a member of upper management at PepsiCo and signed a confidentiality agreement, but not a noncompete agreement. After he accepted a similar position at Quaker, PepsiCo brought an action to enjoin him from assuming his duties or divulging trade secrets, mainly strategic sales, marketing, logistics, and financial information.

In its decision, the district court that first issued the injunction said, "unless Redmond possessed an uncanny ability to compartmentalize information, he would necessarily be making decisions . . . by relying on his knowledge of [PepsiCo] trade secrets." ***PepsiCo***, 54 F.3d at 1267. The Seventh Circuit, upholding that injunction, said, "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that the defendant's new employment will inevitably lead to [the disclosure of trade secrets]." ***Id.*** at 1269.

These are the same arguments that the Baker Hughes Plaintiffs are asserting as a basis for their request for injunctive relief. Critics of the inevitable disclosure doctrine characterize employers who assert it as using allegations of potential misappropriation of trade secrets to enforce a nonexistent covenant not to compete.

The inevitable disclosure doctrine has been rejected in Virginia. ***See Government Tech. Servs,. Inc. v. IntelliSys Tech. Corp.***, 1999 WL 1499548, at *1 (Va. Cir. Ct. Oct. 20, 1999) ("Virginia does not recognize the inevitable disclosure doctrine.") (granting defendant's demurer as to a breach of confidentiality and non-disclosure agreement because the plaintiff's complaint "fails to allege direct or indirect disclosure of any confidential information to ITC but rather states there was an 'inevitable' or conclusory disclosure."). The ***Government*** case has been cited by other courts and treatises as rejecting the inevitable disclosure doctrine in Virginia. ***See***, ***e.g.***, ***Interbake Foods, L.L.C. v. Tomasiello***, 461 F.Supp.2d 943, 957 (N.D. Iowa 2006); ***Whyte v. Schlage Lock Co.***, 101 Cal.App.4th 1443, 1461 (2002); Applicability of Inevitable Disclosure Doctrine Barring Employment of Competitor's Former Employee, 36 A.L.R.6th 537 (2008); Restatement (Third) of Employment Law § 8.05 (2011).

Movants Homa/Harman/FCTech request that this Court apply Virginia law to Plaintiffs' claims, and dismiss Plaintiffs' request for injunctive relief to the extent that it is based on the inevitable disclosure doctrine, which has been rejected in Virginia.

III. Plaintiffs' Texas Theft Liability Act Claim is Inapplicable under Virginia Law

Movants Homa/Harman/FCTech request that this Court dismiss Plaintiffs' Texas Theft Liability Act ("TTLA") claim as inapplicable under Virginia law. Plaintiffs assert the TTLA as the basis for their Count II claim entitled "Statutory Theft." (***See*** Complaint (Docket No. 1) at 19, ¶¶ 67-71.) Plaintiffs have failed to state a claim under the TTLA because the jurisdictional requirements of the TTLA are lacking. Plaintiffs claim that Movants have appropriated trade secrets and tangible property. However, all the acts Plaintiffs claim form the basis of the TTLA violation occurred outside the state of Texas by two individuals domiciled outside Texas and a foreign corporation. Both Homa and Harman are Virginia residents, and FCTech is a Virginia corporation with its principal (and only) place of business in Virginia. To extend Texas law into Virginia and hold any of the Movants liable for theft under the Texas Theft Liability Act is inappropriate.

The TTLA provides civil liability for theft as defined under the Texas Penal Code. ***See*** TEX. CIVIL PRAC. & REM. CODE § 134.002; TEX. PENAL CODE § 31.03. Because the Texas Penal Code provides the basis of the claim, it follows that the jurisdictional requirements of the Penal Code are also applicable. Section 1.04 of the Texas Penal Code defines the territorial jurisdiction of the state for offenses under the Penal Code, which requires the conduct, or a result that is an element of the offense, to occur within the state, or conduct that occurs outside the state to constitute an attempt or conspiracy to commit an offense in the state. TEX. PENAL CODE § 1.04. None of these provisions are applicable in the present case. All conduct that Plaintiffs

allege to constitute the TTLA claim occurred in Virginia; Harman and Homa worked for Plaintiffs in Virginia, and any trade secrets or tangible property that Harman or Homa may have had access to would have been in Virginia. Therefore, no elements of the alleged theft occurred in Texas, and no conduct outside Texas constituted an attempt or conspiracy to commit theft in Texas.

There is little case law that addresses jurisdictional issues of the TTLA, and the two cases that are the most on-point are split. Movants urge the Court to follow the reasoning in ***Breckenridge Enterprises, Inc. v. Avio Alternatives, LLC***, No. 3:08-CV-1782-M, 2009 WL 1469808 (N.D. Tex. May 27, 2009). The defendants in ***Breckenridge*** contracted with the plaintiff, a Texas corporation, to market its services and collect payroll payments directly from the plaintiff's clients and then remit them to plaintiff. ***Id.*** at *1. An employee of defendant embezzled more than $1 million from the defendants' business, including payroll that should have been remitted to plaintiff. ***Id.*** The ***Breckenridge*** court determined that it lacked specific personal jurisdiction over the individual defendants in regards to the TTLA claim because no tortious activity was "purposefully directed" toward Texas and its residents. ***Id.*** The ***Breckenridge*** court properly found that the "Texas Penal Code would not provide for jurisdiction over the alleged theft, and therefore cannot be the basis for jurisdiction over the TTLA claim based on it" where the alleged theft "occurred entirely outside of Texas" and "the tort was not 'directed' towards Texas." ***Id.*** at *9 & n.64. Just like in ***Breckenridge***, all conduct that Plaintiffs in the present action allege constitute their TTLA claim occurred outside Texas, and the alleged theft was not directed toward Texas.

Conversely, the court in ***Settlement Capital Corp. v. Pagan*** failed to address defendant's jurisdictional argument that section 1.04 of the Texas Penal Code precludes jurisdiction because

no element of the theft took place in Texas. 649 F. Supp. 2d 545, 561 (N.D. Tex. 2009). Instead, the court looked to the fact that the TTLA claim arose under the Texas Civil Practices and Remedies Code, and specifically focused on the venue provision of the TTLA as a basis of jurisdiction. "The plain language of section 134 provides that suit may be brought in the county where the theft occurred or in the county where the defendant resides." ***Id.*** at 561. Even if the ***Pagan*** court is correct and the venue provision provides the jurisdictional requirements, there is still no jurisdiction. The alleged theft did not occur in any county of Texas and none of the Movants reside in Texas.

Further, if the TTLA is construed to not derive territorial jurisdiction from section 1.04 of the Texas Penal Code, it would allow unjust results contrary to the law as laid out by the Texas Supreme Court. The Texas Supreme Court has repeatedly determined that state statutes have no extraterritorial effect without an explicit statement otherwise found in "its language, purpose, subject matter, or history." ***See Coca-Cola Co. v. Harmar Bottling Co.***, 218 S.W.3d 671, 682 n.33 (Tex. 2007) (concluding that the Texas Free Enterprise and Antitrust Act of 1983 was not intended to "award[ ] damages and injunctive relief for injury that occurred in other states"); ***Marmon v. Mustang Aviation, Inc.***, 430 S.W.2d 182, 187 (Tex. 1968) (finding the wrongful death statute had no extraterritorial force because it contained no wording to indicate the Legislature intended any extraterritorial effect); ***see also Pittsburgh Corning Corp. v. Walters***, 1 S.W.3d 759, 768 (Tex. App.—Corpus Christi 1999, pet. denied) (noting that the lack of extraterritorial force of the Texas wrongful death statute as discussed in ***Marmon*** was addressed in "a 1975 amendment to section 71.031 [of the Texas Civil Practice and Remedies Code] expanding the cause of action to out-of-state injuries"). Again, assuming the TTLA does not derive territorial jurisdiction from section 1.04 of the Penal Code, there is no indication in the

language or purpose of the TTLA that it should be construed to have extraterritorial force. The TTLA was originally enacted to provide a civil remedy for shoplifting. ***See*** O'CONNOR'S TEXAS CAUSES OF ACTION 935 (2011) (citing House Research Organization Daily Floor Report, S.B. 269, 21 (May 27, 1987)). This falls in line with the TTLA's venue provision: "A suit under this chapter may be brought in the county where the theft occurred or in the county where the defendant resides." TEX. CIVIL PRAC. & REM. CODE § 134.004. The legislative history suggests the TTLA should not be construed to have any extraterritorial force as the Act was intended to provide a remedy for Texas shopkeepers against shoplifting in Texas.

For these reasons, Movants Homa/Harman/FCTech respectfully request that this Court dismiss Plaintiffs' Texas Theft Liability Act claim for failure to state a claim upon which relief can be granted.

## IV. The Non-Solicitation Provision in Homa and Harman's Employment Agreements is Void as an Unenforceable Restrictive Covenant under Virginia Law

Movants Homa/Harman/FCTech request that this Court dismiss Plaintiffs' claims based on the non-solicitation provision in Homa and Harman's employment agreements, which is void as an unenforceable restrictive covenant under Virginia law. Plaintiffs' Complaint asserts that Homa and Harman have breached the following non-solicitation provision in their employment agreements:

> 5. Nonsolicitation - During Employee's employment and for two (2) years after termination of Employee's employment, Employee will not, either directly or indirectly, either solely or in combination or conspiracy with others (whether or not they are employed by the Company), (a) employ, or attempt to employ or solicit for employment, any Company employee, or (b) induce, encourage or influence, or attempt to induce, encourage or influence, any Company employee to leave the Company's employment."

(***See*** Homa/Harman Employee Agreements, ¶ 5 Nonsolicitation (attached as Exhibits A & B to the Willauer Affidavit (Docket No. 1-1 at pages 27-28 and 30-31).)

Under Virginia law, restrictive covenants such as non-competition and non-solicitation agreements are disfavored restraints of trade that will only be enforced if the contract: 1) is narrowly drawn to protect the employer's legitimate business interest; 2) is not unduly harsh and oppressive in curtailing the employee's ability to earn a living; and 3) is not against sound public policy.[5]

An employer seeking to enforce a non-competition and non-solicitation agreement bears the burden of proving that the restraint is reasonable.[6] In assessing the reasonableness of the restrictions under these prongs, Virginia courts focus on the duration of the restraint, the geographic scope of the restraint, and the functional scope and extent of the activity being restricted.[7] Restrictive covenants that prohibit employees from working in any capacity for a competitor are overbroad, and therefore are unenforceable.[8]

The non-solicitation provision in the Baker Hughes employment agreements is void as an unenforceable restrictive covenant under Virginia law because the provision is not narrowly drawn to protect the employer's legitimate business interest. The non-solicitation clause is overbroad as to scope, because it prohibits the hiring of "any Company employee" (including a janitor), to work in any capacity (including as a janitor), for which Baker Hughes has no legitimate business interest in curtailing.

---

[5] ***Home Paramount Pest Control Companies, Inc. v. Shaffer***, --- S.E.2d ----, 2011 WL 5248212, at *1 (Va. Nov. 5, 2011).

[6] ***See Simmons v. Miller***, 544 S.E.2d 666, 678 (Va. 2002) (citing ***Blue Ridge Anesthesia v. Gidick***, 389 S.E.2d 467, 468-69 (Va. 1990)).

[7] ***Lasership Inc. v. Watson***, 79 Va. Cir. 205, 2009 WL 7388870, at *4 (Va.Cir.Ct. 2009).

[8] ***Id.***

Under the Janitor Doctrine, Virginia courts will review restrictive covenants, such as non-compete and non-solicitation agreements, by contemplating various "hypothetical job duties" including bookkeeping, vehicle maintenance, and janitorial services, to determine whether the function element of the provision is confined to those activities the employer is actually engaged in. ***Home Paramount Pest Control***, 2011 WL 5248212, at *3. For an unrestrictive covenant such as Baker Hughes' non-solicitation provision at issue in the present case, Baker Hughes bears the burden of proving a legitimate business interest in prohibiting the solicitation of its employees for all reasonably conceivable activities. The Baker Hughes non-solicitation provision fails a review under the Janitor Doctrine, because Baker Hughes, as a matter of law, has no legitimate business interest in prohibiting its former employees, Homa and Harman, from hiring any Baker Hughes employee, including a janitor, from working in any capacity, including janitorial services, and for any company, including a company operating in areas completely unrelated to Baker Hughes' business.

The Virginia Supreme Court reinforced this strict review of restrictive covenants within the past month in the ***Home Paramount Pest Control*** case, explaining that the Court has "consistently assessed the function element of provisions that restrict competition by determining whether the prohibited activity is of the same type as that actually engaged in by the former employer." ***Id.*** at *2. Under this analysis, this court reviewing the restrictive covenant may never reach the issue of whether the agreement was breached, if the agreement does not pass the threshold question as to whether it is enforceable. The ***Home Paramount Pest Control*** decision explained as follows:

> Finally, Home Paramount argues the circuit court erred in failing to consider its evidence that Shaffer actually breached the Provision by soliciting its customers. However, the threshold question is whether the Provision is enforceable. Since the circuit court determined that the Provision cannot be

> enforced, the issue of its actual breach was not reached. To the extent that Home Paramount argues its evidence of actual solicitation proved it had a legitimate business interest in prohibiting Shaffer from engaging in the same activity for Connor's that he engaged in during the course of his employment by Home Paramount, such evidence would have been relevant if the function element in the Provision had been confined to barring such activity. Because we have found the circuit court did not err in ruling the Provision unenforceable, Home Paramount's evidence of Shaffer's actual breach was not relevant.

***Id.*** at *4.

And finally, Virginia courts have refused to "blue pencil" restrictive covenants, even when the agreement at issue includes a Savings Clause as found in the Baker Hughes Employee Agreements.[9] ***Lasership Inc. v. Watson***, 79 Va. Cir. 205, 2009 WL 7388870, at *9 (Va.Cir.Ct. 2009). ("The Virginia Supreme Court has not directly ruled on 'blue penciling' restrictive covenants. However, . . . Circuit courts throughout the Commonwealth have refused to 'blue pencil' noncompete clauses."). The U.S. District Courts for both the Eastern and Western Districts of Virginia have also concluded that Virginia does not follow the "blue pencil" doctrine. ***See Lanmark Tech, Inc. v. Canales***, 454 F.Supp.2d 524, 529 (E.D.Va.2006); ***Roto–Die, Inc. v. Lesser***, 899 F.Supp. 1515, 1523 (W.D.Va.19995).

Baker Hughes' unrestricted non-solicitation provision cannot be saved. Movants Homa/Harman/FCTech request that this Court dismiss Plaintiffs' claims based on the non-solicitation provision in Homa and Harman's employment agreements, which is void as an unenforceable restrictive covenant under Virginia law.

---

[9] (***See*** Homa/Harman Employee Agreements, ¶ 10 Savings Clause (attached as Exhibits A & B to the Willauer Affidavit (Docket No. 1-1 at pages 27-28 and 30-31) ("To the extent that any provision of this Agreement is judicially determined to be invalid, unlawful or unenforceable, that provision shall be modified to the extent such a court in its discretion deems necessary in order to bring such provision into compliance with the laws of this state and of the United States as applicable.").)

V. Plaintiffs' Claims for Attorneys' Fees Are Not Recoverable under Virginia Law

Movants Homa/Harman/FCTech request that this Court dismiss Plaintiffs' claims for attorneys' fees, which are not recoverable under Virginia law. Plaintiffs request recovery of attorneys' fees in their Count II claim under the TTLA (***see*** Complaint (Docket No. 1) at 19, ¶ 70), and their Count IV claim for breach of contract (***see id.*** at 21, ¶ 80). Plaintiffs also make a general request for recovery of attorneys' fees at page 28, paragraph 112 of the Complaint, without identifying any particular authority for the request. Plaintiffs do not identify any basis under Virginia law to recover attorneys' fees.

Attorneys' fees are not recoverable under Virginia law unless provided for in a particular statute, or specifically provided for in a contract alleged to be breached. ***Lannon v. Lee Conner Realty Corp.***, 385 S.E.2d 380, 383 (Va. 1989) ("[W]e have consistently adhered to the 'American rule': ordinarily, attorneys' fees are not recoverable by a prevailing litigant in the absence of a specific contractual or statutory provision to the contrary." (citing ***Gilmore v. Basic Indus.***, 357 S.E.2d 514, 517 (Va. 1987)).

No Virginia statute provides for recovery of attorneys' fees for the tort claims asserted by Plaintiffs' in this action. Homa and Harman's employment contracts, which are the subject of Plaintiffs' Count IV claim for breach of contract, have no contractual provisions regarding attorneys' fees. The contracts are silent on the issue, which means attorneys' fees are not recoverable under Virginia law. Movants Homa/Harman/FCTech request that this Court dismiss Plaintiffs' claims for attorneys' fees, for failure to state a claim upon which relief can be granted.

VI. Alternative Rule 12(b)(3) Motion to Dismiss for Improper Venue

If this Court does not apply Virginia law to Plaintiffs' breach of contract claim, or does not dismiss Plaintiffs' Texas Theft Liability Act claim, then Movants Homa/Harman/FCTech

assert the following conditional/alternative Rule 12(b)(3) objection to improper venue. Homa/Harman/FCTech are willing to waive their objections to improper venue, and have this case resolved before this Court, but only if the law of Virginia is applied to Plaintiffs' breach of contract claim, and Plaintiffs' Texas Theft Liability Act claim is dismissed.

Under 28 U.S.C. § 1391(a), venue for this diversity action is proper only in the U.S. District Court for the Western District of Virginia, because all of the non-alien Defendants (Homa/Harman/FCTech) reside in the Western District of Virginia, and because the Western District of Virginia is the only "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and the only judicial district in which "a substantial part of property that is the subject of [this] action is situated." § 1391(a)(2).

Section 1391(a) provides as follows:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

When aliens and non-aliens are joined as defendants, as in the present case, venue for the entire action is proper in any district where it is correct as to the non-alien defendants.[10] Venue therefore is proper in the Western District of Virginia under Section 1391(a)(1), because each of

---

[10] ***See Japan Gas Lighter Ass'n v. Ronson Corp.***, 257 F. Supp. 219, 225 (D. N.J. 1966) ("When an alien and a non-alien are joined as defendants, venue for the entire action is proper in any district where it is correct as to the non-alien defendant."); ***see also*** 28 U.S.C. § 1391(d) ("An alien may be sued in any district.").

the non-alien Defendants Homa/Harman/FCT is a resident of the same state, Virginia, and each of them reside in the Western District.[11]

Venue under Section 1391(a)(2) is proper only in the U.S. District Court for the Western District of Virginia, because the Western District is the only "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and the only judicial district in which "a substantial part of property that is the subject of [this] action is situated." ***Id.*** Although Plaintiffs allege in their Complaint that venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 "because a substantial part of the events and omissions giving rise to this claim occurred in [the Southern District of Texas]," (Complaint (Docket No. 1) at 5, ¶ 10), virtually all of the actions of which Plaintiffs complain occurred at the Plaintiffs' Blacksburg, Virginia facility. And none of the actions of which Plaintiffs complain occurred in the Southern District of Texas.

Plaintiffs assert in their Complaint that Homa and Harman's employment agreements "provide for venue in Houston, Texas" (Complaint (Docket No. 1) at 11, ¶ 34), but the venue provision in these agreements does not apply to this case because the provision is limited to arbitration (***See*** Homa/Harman Employee Agreements, ¶ 14 Arbitration ("Venue for arbitration shall be in Houston, Texas . . ..") (attached as Exhibits A & B to the Willauer Affidavit (Docket No. 1-1 at pages 27-28 and 30-31).)

Plaintiffs do not allege in their Complaint that venue is proper under the second clause of 28 U.S.C. § 1391(b), which provides that venue is proper in a judicial district in which "a substantial part of property that is the subject of [this] action is situated." The only tangible

[11] (***See*** Complaint (Docket No. 1) at 4, ¶¶ 3-5 (asserting that Homa resides in Blacksburg, Harman resides in Troutville, and FCTech has its principal place of business in Roanoke, Virginia).) Blacksburg, Troutville, and Roanoke are all in the Western District of Virginia.

property that is the subject of this action are the "lab notebooks, external storage devices, and hard copy and electronic documents" that are the subject of Plaintiffs' Count II claim for Statutory Theft, and Count III Claim for Conversion. Plaintiffs assert in their Complaint that Homa and Harman took this property from Plaintiffs' Blacksburg, Virginia facility, and there is no allegation that this property was ever situated in the Southern District of Texas at any time before the lawsuit was filed.[12]

Baker Hughes should have filed this case in the Western District of Virginia, but Defendants Homa/Harman/FCTech are willing to waive their objections to improper venue, and have this case resolved before this Court, but only if the law of Virginia is applied to Plaintiffs' breach of contract claim, and Plaintiffs' Texas Theft Liability Act claim is dismissed. Homa/Harman/FCTech raise this alternative argument because the breach of contract claim and the Texas Theft liability act are claims through which Baker Hughes seeks recovery of attorneys' fees. As set forth in Section V above, Baker Hughes is not entitled to recover attorneys' fees under Virginia law. Homa/Harman/FCTech are willing to waive their objections to improper venue and have this case resolved by this Court, but not if Baker Hughes' filing of the case in this venue results in their access to a potential recovery of attorneys' fees to which they would not be entitled if they had respected the federal venue rules and filed the case in Virginia.

---

[12] In the event that Plaintiffs seek leave to amend their Complaint to assert the second clause of 28 U.S.C. § 1391(b) as a basis for venue in the Southern District of Texas, by asserting that its trade secrets can be considered to have a fictional situs in Houston, at a residence of Baker Hughes, Movants respectfully request that this Court reject any such contentions as insubstantial, especially in light of case law which would support the situs of the asserted trade secrets considered to be Blacksburg, Virginia where the information originated and was developed. ***See, e.g.***, ***Paul Green School of Rock Music Franchising, LLC v. Rock Nation, LLC***, 2009 WL 129740, at *2 (E.D. Pa. Jan. 13, 2009) ("[I]n regards to trade secrets, we recognize that '[u]nlike trademarks, which seem

VII. Conclusion

For the foregoing reasons and authorities cited, Movants Homa/Harman/FCT respectfully request that this Court conduct a conflict of laws analysis to determine that Virginia is the appropriate state law to apply for Plaintiffs' claims, and then apply Virginia law to:

1) Dismiss Plaintiffs' request for injunctive relief to the extent that it is based on the inevitable disclosure doctrine, which has been rejected under Virginia law;
2) Dismiss Plaintiffs' Texas Theft Liability Act claim as inapplicable under Virginia law;
3) Dismiss Plaintiffs' claims based on the non-solicitation provision in Homa and Harman's employment agreements, which is void as an unenforceable restrictive covenant under Virginia law; and
4) Dismiss Plaintiffs' claims for attorneys' fees, which are not recoverable under Virginia law.

In the alternative, if this Court does not apply Virginia law to Plaintiffs' breach of contract claim, and dismiss Plaintiffs' Texas Theft Liability Act claim, then Movants Homa/Harman/FCTech respectfully request that the Court dismiss this action pursuant to Rule 12(b)(3) due to improper venue.

---

to have no real situs, trade secrets have a situs in their state of origin.") (quoting ***Harry Miller Co. v. Carr Chem***, 5 F.Supp.2d 295, 298 n.1 (E.D. Pa. 1998)).

Respectfully submitted this 7th day of December, 2011.

s/Charles J. Rogers
**Gregory L. Maag**
Texas State Bar Number 12748500
Southern District of Texas No. 841
gmaag@conleyrose.com
**Charles J. Rogers**
Texas State Bar No. 00786205
Southern District of Texas No. 129028
crogers@conleyrose.com
**Thomas L. Warden**
Texas State Bar No. 24004174
Southern District of Texas No. 22342
twarden@conleyrose.com
CONLEY ROSE, P.C.
600 Travis, 71st Floor
Houston, Texas 77002
Telephone: 713.238.8000
Facsimile: 713.238.8008

**Mark A. Haney**, attorney-in-charge
Texas State Bar No. 08908480
Admitted Pro Hac Vice
mhaney818@sbcglobal.net
Kobs, Haney, & Hundley, L.L.P.
115 West Second Street, Suite 204
Fort Worth, Texas 76102
Telephone: 817.498.9911
Facsimile: 817.332.2899

**ATTORNEYS FOR DEFENDANTS DANIEL S. HOMA, ROBERT M. HARMAN, AND FCTECH, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December, 2011, I electronically filed the foregoing ***Motion to Dismiss by Defendants Homa, Harman, and FCTech for Failure to State a Claim*** with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the following attorneys of record who are Filing Users of the Court's Electronic Filing System:

Jayme Partridge jpartridge@fulbright.com
Bill Slusser slusser@fulbright.com
Brett McKean bmckean@fulbright.com
Fulbright & Jaworski L.L.P.
1301 McKinney, Suite 5100
Houston, Texas 77010

s/Charles J. Rogers
Charles J. Rogers